HERBSMAN HAFER WEBER & FRISCH, LLP
Dorothy M. Weber, Esq. (DW-4734)
494 Eighth Avenue, Suite 600
New York, NY 10001
(212) 245-4580
dorothy@musiclaw.com

*Attorneys for Plaintiff Soundtrec LLC.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
SOUNDTREC LLC,

           Plaintiff,

   -against-

MASSIMO GALLOTTA PRODUCTIONS, LTD
d/b/a MGP Live,

           Defendant.
-----------------------------------------------------------------x

Case No.

**COMPLAINT**

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Soundtrec LLC (hereinafter referred to as "Plaintiff" or "Soundtrec"), by and through its attorneys, Herbsman Hafer Weber & Frisch, LLP, for its Complaint for Declaratory Judgment herein against defendant Massimo Gallotta Productions, LTD d/b/a MGP Live (hereinafter referred to as "Defendant" or "MGP"), alleges as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court also has jurisdiction over this action and Defendant pursuant to 28 U.S.C.

§ 1332(a)(2), as the matter in controversy exceeds Seventy-Five Thousand ($75,000) dollars exclusive of interests and costs and is between a citizen of a state and a citizen of a foreign state.

2. This Court may exercise personal jurisdiction over Defendant pursuant to § 302 of the New York Civil Practice Law and Rules because MGP transacts business within the state and owns, uses or possesses real property within the state. Further, this Court may exercise personal jurisdiction over Defendant pursuant to § 301 of the New York Civil Practice Law and Rules because MGP systematically and continuously conducts and solicits business within New York and has availed itself of the privileges of conducting business in the State of New York.

3. Venue is proper pursuant to 28 U.S.C. §§ 1391 (b) and (c) because a substantial part of the events or omissions by MGP giving rise to the claims occurred in this District, and because MGP is subject to personal jurisdiction in this District.

## THE PARTIES

4. Plaintiff Soundtrec is a limited liability company organized and existing under the laws of Massachusetts with its principal place of business located at 50 Prospect Street, Unit 2202, Somerville, Massachusetts 02143. The sole member of Soundtrec is a citizen of Japan and a resident of Massachusetts.

5. Defendant MGP, upon information and belief, is a corporation organized and existing under the laws of New York, with its principal place of business located at One Penn Plaza, Suite 2130 New York, New York 10119.

## NATURE OF ACTION

6. This is an action for declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq*. and Rule 57 of the Federal Rules of Civil Procedure to determine, *inter alia*, questions of actual controversy between the parties as more fully described in this Complaint.

## BACKGROUND FACTS

### The SONIC Symphony Tour

7. Soundtrec is a Boston based music and live production company.

8. Soundtrec's experience and prominent reputation in the industry led to their exclusive license with SEGA of America, Inc. ("SEGA"), to create and produce the Sonic Symphony Tour (or "Event").

9. The Sonic Symphony Tour is a concert tour featuring, among other things, original arrangements by Shota Nakama (the principal of Soundtrec LLC), that are performed by an orchestra and rock band handpicked by the Plaintiff. A multimedia event which displays footage synchronized to the music, the Sonic Symphony Tour is more than a concert — it's a fully immersive, sensory experience conceived and created by Plaintiff. The Event combines visuals, interactive elements, and a dynamic mix of orchestral arrangements with a live rock band performing the iconic Sonic the Hedgehog soundtrack.

10. Beginning in 2023, Soundtrec, as SEGA's exclusive licensee, has been producing the Sonic Symphony Tour.

11. Soundtrec's Sonic Symphony Tour has received worldwide renown and popularity, touring throughout the United States and worldwide.

**Agency Agreement with Defendant MGP**

12. In or about February 2023, Plaintiff retained the services of Defendant MGP as its exclusive promoter and agent for the Sonic Symphony Tour for North America and Europe. A true and correct copy of the agency agreement ("Agency Agreement") without the exhibits is annexed hereto as Exhibit "A".

13. MGP held itself out as a first-class promoter who was the agent for shows like the Sonic Symphony Tour and other shows, including, but not limited to, a Batman orchestral show.

14. MGP's obligations under the Agency Agreement mandated use of MGP's "best efforts" together with its obligation of good faith and fair dealing imposed under New York law.

15. Pursuant to the terms of the Agency Agreement, Defendant would, *inter alia*, be responsible to "produce and promote the [Sonic Symphony Tour] Events (in accordance with the terms specifically set forth hereunder) in their market."

16. The clear and unambiguous terms of the Agency Agreement provided that Defendant understood, agreed and accepted that it would be

performing its duties and obligations on behalf of Soundtrec and the parties understood unequivocally that Soundtrec was to be in control of the undertaking.

17. Specifically, the Agency Agreement, Section 2(b) provided, *inter alia,* that:

    iii. MGP would "use its best efforts to book only well established venues for the Events. All parties agree[d] that the venues shall be deemed 'well established venues' by Soundtrec LLC pursuant to this [Agency] Agreement"…MGP "must communicate to Soundtrec LLC the name of the proposed event venue, sellable capacity, and date of each Event, and must receive written approval by Soundtrec LLC before booking and announcing each Event, and Soundtrec shall respond within 5 days, otherwise the venue is considered approved by Soundtrec LLC. MGP must also inform Soundtrec LLC of any group discounts, at least 5 business days before they are implemented and made public."

    v. MGP would "obtain all rights from the venues, Orchestras, and any other third parties….as are necessary for the Performance of the Arrangements at the Events and/or to otherwise conduct the Events, including, but not limited to all rights necessary to fulfill the terms of this [Agency] Agreement."

    vi. MGP would "use its best reasonable commercial efforts, taking into consideration all reasonably relevant factors and circumstances, to market and promote the Events in a first-class manner so as to maximize potential attendance."

    viii. MGP "must submit to Soundtrec LLC any and all promotional assets such as artwork, photos, videos, logos, websites, and web pages that MGP…and any of its partners intend to utilize to advertise the [E]vents." MGP also "agree[d] not to utilize any promotional assets without their written approval by Soundtrec LLC."

    ix. MGP "agree[d] to arrange for accurate ticket reports to be sent to Soundtrec LLC at least on a bi-weekly basis for all [E]vents that are currently on sale."

    xii. MGP would "ensure that Soundtrec LLC will be able to sell tour merchandise at each concert and will inform Soundtrec LLC in advance of any restrictions or fees imposed by each venue regarding the sale or merchandise."

18. Additionally, at Section 2(b)(vii) of the Agency Agreement, Defendant further agreed to be bound by the nineteen (19) page technical rider to the Agency Agreement. The technical rider provided the comprehensive and proprietary specifications created by Soundtrec with SEGA's approval for each Event, down to, *inter alia*, the numbers of each instrument to comprise the live orchestra and how many lumens to use for the projector's brightness.[1]

19. Such specifications were required, *inter alia*, to ensure a superb quality Event and to protect the integrity of SEGA's intellectual property.

20. MGP failed or refused to perform or performed its obligations in an unprofessional, substandard manner, which conduct led to numerous complaints by SEGA's fans, with many of these fan complaints being relayed directly to SEGA by the fans.

21. The Agency Agreement clearly and unambiguously provided that MGP was acting for Plaintiff and that MGP accepted and understood its role as an agent for Plaintiff. The parties both unequivocally understood and agreed that Plaintiff was in control of the Event.

## MGP's Multiple Material Breaches

22. In material breach of the clear terms of the Agency Agreement, MGP consistently booked inappropriate venues, such as Davies Symphony Hall in San Francisco and Bradley Center in Milwaukee, which are symphonic venues

---

[1] Because of the proprietary information contained in the technical rider, the technical specifications are not attached but are incorporated by reference.

where rock show lighting is not permitted. MGP's failure to include Soundtrec in their booking strategy materially breached Sections 2(b)(ii) and (vii) of the Agency Agreement, as well as their role as an agent to its principal.

23. Upon information and belief, MGP is not licensed to be an agent in California or New York as required, nor is MGP current on its corporate filings with New York's Department of State.

24. MGP generally failed and refused to provide its booking, marketing techniques, sales strategy and venue choices to Plaintiff.

25. In material breach of the clear terms of the Agency Agreement, MGP has (i) failed to provide accurate ticket reports to Soundtrec on a bi-weekly basis, in breach of paragraph 2(b)(ix) of the Agency Agreement; (ii) failed to market the Event in a first-class manner, in breach of paragraph 2(b)(vi) of the Agency Agreement; and (iii) did not obtain all necessary rights from venues, in breach of paragraph 2(b)(v) of the Agency Agreement.

26. MGP failed to provide adequate ticket reports, including, *inter alia*, the ticket reports do not include a breakdown of ticket sales by types of tickets sold or by revenue.

27. In material breach of the clear terms of the Agency Agreement, Section 2(b)(viii), MGP has never provided any details of marketing and promotional activities.

28. MGP has never provided any social media metrics for the Events.

29. In fact, social media postings by MGP are inconsistent and consist mainly of re-posting Soundtrec's posts. Fans and followers have consistently complained that they never receive replies from MGP.

30. In material breach of the clear terms of the Agency Agreement and the specifications of the technical rider, MGP has failed to secure the right to record and film the Sonic Symphony Tour shows. For instance, SEGA and Soundtrec intended to film the September 30, 2023, performance in Los Angeles. Upon arriving at the venue with cameras, they were informed that the union would not permit the filming or multi-track audio recording – a restriction which MGP should have been aware of beforehand.

### MGP's Failure to Pay Expenses

31. In material breach of the clear terms of the Agency Agreement, MGP has failed to pay for the costs of the flights for the lighting director for the Event. Pursuant to the technical rider in the Agency Agreement, which MGP must comply with pursuant to paragraph 2(b)(vii) of the Agency Agreement, MGP is to provide a monitor engineer and a lighting director at MGP's cost. The Transportation and Accommodation section of the technical rider specifically states, "Round Trip flights for all the touring musicians and crew should be provided by [MGP]." If not provided, "reimbursement for the flights should be made withing 5 business days from the day [MGP] receives the invoice." MGP has thus materially breached the Agency Agreement by failing to pay for the costs and transportation expenses of the lighting director.

32. In material breach of the clear terms of the Agency Agreement and the specifications of the technical rider, MGP is also responsible for providing lighting for the Event. MGP has breached this requirement on numerous occasions, claiming that lighting is not necessary for the show.

33. In material breach of the clear terms of the Agency Agreement and the technical rider, MGP failed to provide certain gear, causing Soundtrec to have to purchase the equipment. If MGP is unable to provide the necessary gear, MGP must pay a rental fee to Soundtrec for the gear Soundtrec had to purchase and then bring on tour, which fees MGP has refused to pay. MGP is obligated to provide all of the equipment listed in the technical rider to the Agency Agreement at MGP's cost.

34. In material breach of the clear terms of the Agency Agreement and the technical rider, many of the hotels for the performers were not within walking distance of the venue. In San Diego, for instance, the hotel was close to nine (9) miles from the venue. In Greensboro, the hotel was so far from the venue that Soundtrec had to insist MGP change the hotel.

35. In material breach of the clear terms of the Agency Agreement and the technical rider, MGP is obligated to provide ground transportation to the venue from the hotel and back to the hotel – another obligation MGP has consistently failed to provide.

36. Such breaches by MGP have resulted in damages to Plaintiff in excess of One Hundred Thousand ($100,000) dollars.

### Merchandise

37. Soundtrec specifically reserved merchandising rights and MGP was obligated to support and facilitate those rights pursuant to the Agency Agreement, Section 2(b)(xii).

38. MGP has materially breached the Agency Agreement by engaging in conduct limiting Plaintiff's ability to maximize sales of merchandise to fans including, *inter alia*, refusing to "open the doors" with sufficient time for fans to have the ability to purchase such merchandise.

### Failure to Provide Basic Event Requirements

39. In violation of the Agency Agreement, the decision to hire a traveling conductor was made by MGP without consultation with Soundtrec.

40. MGP has further materially breached the Agency Agreement as follows:

  a. MGP was required to provide a monitor engineer and a lighting director. Neither was provided or paid for by MGP.

  b. MGP was required to provide tables, chairs, water and markers for post-show meet and greets. MGP never provided any materials for meet and greets.

  c. MGP was responsible for providing printed hard copies of sheet music for orchestras. MGP never provided or paid for printed hard copies of sheet music.

  d. MGP was obligated to secure all rights for the Soundtrec to take photos and video of rehearsals and performances for archival and non-commercial purposes. MGP never secured such rights.

41.     MGP thus failed to perform substantial and essential parts of the Agency Agreement, the performance of which was the initial inducement for entering the Agency Agreement.

### **The Terms and Duration of the Agency Agreement are Clear and Unambiguous**

42.     The parties contemplated, and the Agency Agreement contains, a clear and defined term. Section 1(b) provides:

> **(b) Term.** The term of this Agreement shall commence on the Effective Date of this agreement and shall continue until Juy [sic] 31, 2024, including the entire Tour Period outlined below, unless sooner terminated in accordance with this Agreement.
>
> In the event that SEGA of America, Inc. and Soundtrec LLC agree to extend the term of Soundtrec LLC's exclusive license of the "Sonic Symphony" tour, by amendment, modification, replacement, or renewal of the currently existing license, beyond the end-date set forth in such current license, at the execution of this Agreement, the Term of this Agreement shall extend to such new extended date which Soundtrec LLC and SEGA of America, Inc. agree to.

43.     The Agency Agreement, drafted by MGP, does not contain a cure provision.

### **Termination of MGP**

44.     Plaintiff terminated the Agency Agreement, but permitted MGP to continue with dates it had already booked.

45.      MGP has consistently refused to acknowledge the breaches and termination and are also taking the position that the Agency Agreement would renew "as long as Soundtrec put on a Sonic show."

46.     Plaintiff's apprehension of facing imminent litigation from Defendant is further heightened because in December 2024, Massimo Gallotta, the principal of MGP, began tortiously interfering with Soundtrec's exclusive contractual relationship with SEGA by, *inter alia*, improperly communicating about the Agency Agreement with SEGA executives and employees.

## AS AND FOR A FIRST CLAIM
### Declaratory Judgment

47.     Plaintiff repeats and realleges the allegations of paragraphs "1" through "46" of this Complaint, as if fully set forth herein.

48.     An actual controversy has arisen between the parties over Plaintiff's termination of MGP's rights under the Agency Agreement, as well as when the Agency Agreement will expire by its own terms notwithstanding it's proper termination.

49.     Based on the claims and threats made by Defendant, Plaintiff has a reasonable apprehension that Defendant will continue to improperly hold itself out as an agent of the Plaintiff and/or its exclusive licensor SEGA; will continue to interfere in Plaintiff's relationship with its exclusive licensor SEGA; and will continue its claims and threats going forward which will jeopardize Plaintiff's reputation and ability to conduct its own business, particularly in connection with the Sonic Symphony Tour.

50.     There exists, therefore, an actual and justiciable controversy between the Plaintiff and Defendant under 28 U.S.C. §2201, and a declaratory

judgment by this Court will serve a practical end by clarifying and stabilizing the parties' disputes.

51.   Plaintiff is in need of a declaration of its rights and legal relations between the parties, and is entitled to a declaratory judgment that:

a. The Agency Agreement was properly terminated on July 29, 2024, after written notice of breach or based on Defendant's material breaches; Defendant is no longer the agent of Plaintiff; and that the Defendant has no rights in connection with the Agency Agreement and any of the properties referred to therein; and

b. Alternatively, even if the Agency Agreement was not terminated on July 29, 2024, it expires by its terms on July 29, 2025, and will not be subject to any further renewals, notwithstanding any further amendment, modification, replacement, or renewal of the Plaintiff's current license agreement with SEGA.

**WHEREFORE,** Plaintiff Soundtrec LLC demands judgment in their favor as follows:

A.   A declaration that the Agency Agreement was properly terminated for cause as of July 29, 2024; or alternatively that the Agency Agreement will terminate by its own terms as of July 29, 2025;

B.   A permanent injunction as of the date of termination enjoining and restraining Defendant MGP, its agents, attorneys and all persons in active concert or participation with Defendant MGP from:

i) performing any further acts or exercising any authority on behalf of Plaintiff in connection with any matter for which Defendant was acting as Plaintiff's agent;

ii) any and all actions, communications, and representations that imply Defendant is still authorized to act on behalf of the Plaintiff; and

iii) communicating with Plaintiff's licensor SEGA.

C. Defendant shall promptly return to Plaintiff any documents, property, or confidential information belonging to the Plaintiff that were obtained during the course of the agency relationship;

D. An order that Defendant MGP be required to pay to Plaintiff Soundtrec the costs of this action and its reasonable attorneys' fees;

E. Awarding Plaintiff any additional equitable relief necessary to protect its interests; and

F. That Plaintiff Soundtrec have such other and further relief as to this Court may deem just and proper.

Dated:    New York, New York
          January 22, 2025

                                    HERBSMAN HAFER WEBER &
                                    FRISCH, LLP


                              By:   /s/ Dorothy M. Weber
                                    Dorothy M. Weber, Esq. (DW-4734)
                                    494 Eighth Avenue, Suite 600
                                    New York, NY 10001
                                    (212) 245-4580
                                    dorothy@musiclaw.com

                                    *Attorneys for Plaintiff*

14